OPINION
On September 14, 2001, the Licking County Grand Jury indicted appellant, Wesley Young, on one count of aggravated burglary with a firearm specification in violation of R.C. 2911.11 and one count of assault on a peace officer in violation of R.C. 2903.13. Said charges arose from the burglary of a residence located at 16 Bolton Avenue in Newark, Ohio.
On November 29, 2001, appellant pled guilty to the assault charge, and a bench trial commenced on the aggravated burglary with firearm specification charge. At the conclusion of the trial, the trial court found appellant guilty. By judgment entry filed January 3, 2002, the trial court sentenced appellant to a total aggregate term of four years in prison.
Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I "THE TRIAL COURT COMMITTED HARMFUL ERROR IN FINDING THE DEFENDANT-APPELLANT GUILTY OF THE OFFENSE CHARGED IN COUNT ONE OF THE INDICTMENT AND ACCOMPANYING FIREARM SPECIFICATION, BASED ON THE EVIDENCE REFLECTED IN THE RECORD NOW BEFORE THIS HONORABLE COURT."
 I
Appellant claims the trial court erred in finding him guilty of aggravated burglary with a firearm specification. Appellant claims the evidence is not sufficient to establish he had a firearm on or about his person or under his control while committing the offense. We disagree.
On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259.
Appellant argues the Supreme Court of Ohio in State v. Cowan,87 Ohio St.3d 68, 1999-Ohio-250, has modified the use of circumstantial evidence as follows at 78:
 "A trier of fact may not draw `[a]n inference based * * * entirely upon another inference, unsupported by any additional fact or another inference from other facts[.]' Hurt v. Charles J. Rogers Transp. Co. (1955), 164 Ohio St. 329, 58 O.O. 122, 130 N.E.2d 820, paragraph one of the syllabus. However, `[a]n inference * * * based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged in * * *.' Id., paragraph two of the syllabus."
We do not find this to be a modification of the definition of circumstantial evidence. The drawing of one inference upon another has never been permitted, but two inferences may naturally follow from the same set of facts and circumstances.
With this standard in mind, we will review the evidence presented. It is important to note that in State v. Powell (1991), 59 Ohio St.3d 62, paragraph two of the syllabus, the Supreme Court of Ohio established a conviction on a firearm specification may be based on the fact the offender acquired the firearm by theft during the commission of the underlying felony:
 "A three-year additional term of actual incarceration may be imposed pursuant to R.C. 2929.71
if the defendant has a firearm in his or her possession at any time during the commission of a felony, even if the firearm is acquired by theft during the course of the felony. (R.C. 2929.71, construed.)"
Appellant was convicted of aggravated burglary in violation of R.C.2911.11(A)(2) which states as follows:
 "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
Four individuals resided in the residence in question during the time of the offense, Graham Wilson, his mother, Kathleen Wilson, his girlfriend, Corey Skeens, and Ricky Swick, who Ms. Wilson described as her "transient," kind of like an unofficial son. T. at 24, 41-42, 47, 69, 77-78. Mr. Wilson was the owner of the house and the owner of several firearms including a .38 Special. T. at 20, 45. The night before the incident, Mr. Graham used the .38 Special for target shooting and placed it back into his gun cabinet at around 9:00 p.m. T. at 45-46.
In the afternoon of August 8, 2001, Ms. Wilson arrived home and discovered an intruder searching the storage arm of her recliner. T. at 21-22. When Ms. Wilson confronted the intruder, he fled. T. at 21. Ms. Wilson did not see the intruder with a firearm. T. at 29. Thereafter, Ms. Wilson called her son to tell him of the incident. T. at 23. During this same time, Mr. Swick came home. T. at 24. When Ms. Wilson described the intruder to Mr. Swick, Mr. Swick stated the intruder was appellant who "was just here. I took him away." Id. Appellant had been at the house some ten to fifteen minutes before the incident looking at a vehicle Ms. Skeens had for sale. T. at 63-64, 80. When appellant was done looking at the vehicle, Mr. Swick gave him a ride and "dropped him off up the road." T. at 65.
Following the incident, Ms. Wilson and Mr. Swick checked the house and discovered the gun cabinet open and the .38 Special missing. T. at 68. The gun cabinet had been closed in the morning prior to the incident. T. at 69.
During her confrontation with the intruder, Ms. Wilson got a view of his face. T. at 22-23. She identified appellant from a photo array and in court during the trial. T. at 27-28, 95-96. All four residents of the home at the time in question agree they did not give appellant permission to be in the home. T. at 28-29, 52, 69-70, 87.
Appellant was interviewed by Detective Steve Baum of the Newark Police Department. During the course of the interview, Detective Baum "empathized" with appellant that other than the gun, all he got was change and appellant nodded in response. T. at 99. Detective Baum emphasized he needed to get the gun back and appellant stated he "doesn't know where any of the stuff he steals ends up." Id. Appellant explained he did not know where the gun was because he does not know any names, only street names. T. at 99-100. During the interview, appellant never denied his involvement in the burglary or denied taking the gun. T. at 100.
The direct facts presented to the trial court were that appellant was in the home without consent and he was there to commit a theft offense. Appellant admitted to getting change. T. at 99, 101-102. The missing .38 Special was operable and secured in a gun cabinet the evening before the burglary. None of the residents removed the gun from the cabinet. T. at 31-32. From these facts, only one inference is to be made and that is that appellant took the gun. There was no evidence that any one else was in the house for the purpose of committing a theft save appellant.
Appellant's own admission that he did not know where the stuff he steals ends up when specifically questioned about returning the gun is sufficient to raise a separate inference that he took more than just change.
Upon review, we find sufficient direct evidence to lead to the conclusion that appellant stole the gun.
The sole assignment of error is denied.
The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.
By FARMER, J. HOFFMAN, P.J. and BOGGINS, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Licking County, Ohio is affirmed.